**[Cite as *State v. Bears*, 2026-Ohio-2452.]**

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.  25CA012323 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| AMY E. BEARS | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellee | CASE No.  24CR112208 |

## DECISION AND JOURNAL ENTRY

Dated: June 29, 2026

FLAGG LANZINGER, Presiding Judge.

{¶1}  The State of Ohio appeals from the judgment of the Lorain County Court of Common Pleas that granted, in part, Amy Bears's motion to suppress.  For the following reasons, this Court reverses and remands the matter for further proceedings consistent with this decision.

I.

{¶2}  A grand jury indicted Bears on the following three counts: (1) aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a); (2) operating a vehicle while under the influence of alcohol, a drug of abuse or a combination of them in violation of R.C. 4511.19(A)(1)(a); and (3) operating a vehicle while under the influence of alcohol, a drug of abuse or a combination of them in violation of R.C. 4511.19(A)(2)(a) and (b).  Bears pleaded not guilty and the matter proceeded to a suppression hearing.  This Court will limit its recitation of the facts to those relevant to this appeal.

{¶3} Officers arrested Bears for the underlying charges and transported her to the police station for booking. While there, Bears told officers she was suicidal. Officers then transported Bears to the Cleveland Clinic Avon Hospital.

{¶4} As part of the hospital's suicidal-ideation protocol, a paramedic performed a blood draw on Bears. The paramedic then sent the blood sample to the hospital's internal lab for processing. The lab results indicated the value of ethanol in Bears's blood was 188 milligrams per deciliter. Below this result, a "Comment" indicated that values more than 80 milligrams per deciliter "may indicate intoxication[.]"

{¶5} Bears moved, in part, to suppress the results of the blood test taken at the hospital. Bears argued the trial court should suppress the results because the blood test did not comply with the requirements for blood tests contained in the Revised Code and the Administrative Code.

{¶6} The trial court held a hearing on Bears's motion. After the hearing, the trial court granted part of Bears's motion, but denied the remainder of her motion. Relevant to this appeal, the trial court granted Bears's motion to suppress the results of the blood test. In doing so, the trial court concluded: (1) the blood test did not comply with R.C. 4511.19(D)(1)(b) because it was not performed within three hours of the incident; and (2) the blood test did not comply with Adm.Code 3701-53 because the evidence did not establish that the paramedic used a solid anticoagulant during the blood draw.

{¶7} The State has appealed the trial court's decision under Crim.R. 12(K), raising one assignment of error for this Court's review.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED WHEN IT GRANTED APPELLEE'S MOTION TO SUPPRESS, IN PART, BY SUPPRESSING THE RESULTS OF HER MEDICAL BLOOD ALCOHOL TEST UNDER R.C. 4511.19(D)(1)(b).**

**{¶8}** In its sole assignment of error, the State argues the trial court erred when it suppressed the results of the blood test because the trial court applied the wrong legal standard. For the following reasons, this Court agrees.

**{¶9}** A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside* at ¶ 8, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist. 1997). Accordingly, this Court grants deference to the trial court's findings of fact but conducts a de novo review of whether the trial court applied the appropriate legal standard to those facts. *State v. Booth*, 2003-Ohio-829, ¶ 12 (9th Dist.).

**{¶10}** Here, the State makes clear it is not challenging the trial court's factual findings. Rather, it is solely challenging the legal standard the trial court used. Specifically, the State argues the trial court erred by relying on R.C. 4511.19(D)(1)(b) because subsection (b) only applies to blood tests performed at the request of law enforcement or pursuant to a search warrant, not blood tests—like here—performed by a health care provider for purposes of medical diagnosis and treatment. The State argues the trial court should have instead applied R.C. 4511.19(D)(1)(a), which relates to blood tests performed and analyzed by a health care provider. For the following reasons, this Court agrees.

{¶11}   R.C. 4511.19(D)(1)(a) provides:

> In any criminal prosecution . . . for a violation of division (A)(1)(a) of this section or for an equivalent offense that is vehicle-related, the result of any test of any blood, oral fluid, or urine **withdrawn and analyzed at any health care provider**, as defined in section 2317.02 of the Revised Code, may be admitted with expert testimony to be considered with any other relevant and competent evidence in determining the guilt or innocence of the defendant.

(Emphasis added.)

{¶12}   R.C. 4511.19(D)(1)(b), on the other hand, provides that a "court may admit evidence on the presence and concentration of alcohol . . . when a person submits to a blood . . . test **at the request of a law enforcement officer** under section 4511.191 of the Revised Code or a blood . . . sample is obtained pursuant to a search warrant." (Emphasis added.)  Subsection (b) also sets forth requirements that must be met for a trial court to admit the results of a blood test performed at the request of law enforcement, including that the blood be drawn "within three hours of the time of the alleged violation."  *Id.*  Subsection (b) further provides that "[t]he bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code."  *Id.*  Subsection (a) does not contain these requirements.  R.C. 4511.19(D)(1)(a).

{¶13}   The pre-2007 version of R.C. 4511.19(D)(1) did not distinguish between blood tests performed at the request of law enforcement from blood tests performed by a health care provider *not* at the request of law enforcement.  *State v. Mayl*, 2005-Ohio-4629, ¶ 20-23, quoting former R.C. 4511.19(D)(1).  The Ohio Supreme Court acknowledged this in *State v. Mayl*.

{¶14}   In *Mayl*, the State argued the blood test at issue was not required to comply with the requirements of then-R.C. 4511.19(D)(1) because it was performed by hospital staff as part of the defendant's medical treatment, not at the request of law enforcement.  *Id.* at ¶ 53.  The Ohio

Supreme Court disagreed, explaining it did "not matter who requests the test" because "no portion of R.C. 4511.19(D)(1) distinguishes between the admissibility of test results obtained by hospitals and the admissibility of those obtained by law enforcement." *Id.* at ¶ 56. The Court also explained that if the legislature intended to limit R.C. 4511.19(D)(1) to blood tests performed at the request of law enforcement under R.C. 4511.191, "it could have prefaced R.C.4511.19(D)(1) with that limitation." *Id.* at ¶ 56. The Court concluded:

> Until the legislature creates a specific exemption, hospital tests of bodily substances—to be admissible in prosecutions that have as an element of proof a violation of R.C. 4511.19(A) . . . —must substantially comply with Ohio Adm.Code Chapter 3701-53 and R.C. 4511.19(D)(1).

*Id.* at ¶ 61.

{¶15} In 2007, less than two years after the *Mayl* decision, the legislature amended R.C. 4511.19(D)(1) to include the following subsection:

> In any criminal prosecution . . . for a violation of division (A)(1)(a) of this section or for an equivalent offense, the result of any test of any blood or urine **withdrawn and analyzed at any health care provider**, as defined in section 2317.02 of the Revised Code, may be admitted with expert testimony to be considered with any other relevant and competent evidence in determining the guilt or innocence of the defendant.

(Emphasis added.) Former R.C. 4511.19(D)(1)(a) (effective April 4, 2007). The current version of R.C. 4511.19(D)(1)(a) contains substantially the same language. Courts have interpreted the 2007 amendment to be the legislature's direct response to the *Mayl* decision. *See, e.g.*, *State v. Davenport*, 2009-Ohio-557, ¶ 15 (12th Dist.).

{¶16} After the 2007 amendment to R.C. 4511.19(D)(1), "this Court – among others – has acknowledged that substantial compliance with Ohio Adm.Code Chapter 3701-53 is no longer required for admissibility purposes if the defendant's blood is drawn and analyzed by a health care provider, and is accompanied by expert testimony." *State v. Bugg*, 2018-Ohio-2544, ¶ 12 (9th

Dist.) (collecting cases); *accord State v. Williams*, 2020-Ohio-1367, ¶ 29 (1st Dist.), citing *Bugg* at ¶ 12 ("Under the plain language of R.C. 4511.19(D)(1)(a), the state was not required to show substantial compliance with the Administrative Code regulations before the results of [the defendant's] blood and urine tests could be admitted as evidence of his guilt to prove these offenses, as long as the other requirements in R.C. 4511.19(D)(1)(a) were met.").

{¶17} Here, the trial court erroneously suppressed the results of Bears's blood test on the basis that it did not substantially comply with R.C. 4511.19(D)(1)(b) and Adm.Code 3701-53. At the suppression hearing, the State presented testimony from the paramedic with the Cleveland Clinic hospital who performed the blood draw on Bears. The paramedic explained he performed the blood draw as part of the hospital's suicidal-ideation protocol for purposes of medical diagnosis and treatment. The paramedic also explained he sent the blood draw "to our lab, which is somewhere in the facility of the building." The State then introduced a copy of the lab results. Thus, the trial court should have applied R.C. 4511.19(D)(1)(a), not R.C. 4511.19(D)(1)(b) and Adm.Code 3701-53. *See Bugg* at ¶ 12.

{¶18} In her brief on appeal, Bears does not rebut the State's argument that R.C. 4511.19(D)(1)(a), not R.C. 4511.19(D)(1)(b), applies to this case. Instead, Bears argues the use of "may" in R.C. 4511.19(D)(1)(a) gives a trial court discretion with respect to admitting the results of a blood test performed by a health care provider, and that the trial court did not abuse its discretion in this case. Bears also argues the State's appeal is improper because the State failed to prove that the exclusion of the lab results "seriously jeopardized" the States's case for purposes of an appeal under Crim.R. 12(K).

{¶19} Bears's arguments lack merit. A failure to apply the correct law warrants reversal for the trial court to apply the correct law in the first instance. *See State v. Soto*, 2017-Ohio-4348,

¶ 25 (9th Dist.). Additionally, this Court has no authority to review a prosecutor's Crim.R. 12(K) certification "that the granting of a motion to suppress has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed." *State v. Bertram*, 80 Ohio St.3d 281 (1997), paragraph two of the syllabus (addressing then-Crim.R. 12(J), which is now Crim.R. 12(K)).

{¶20} For the foregoing reasons, the State's assignment of error is sustained.

II.

{¶21} The State's assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is reversed and the cause is remanded for further proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JILL FLAGG LANZINGER
FOR THE COURT

SUTTON, J.
STEVENSON, J.
CONCUR.

APPEARANCES:

ANTHONY CILLO, Prosecuting Attorney, and LINDSEY C. POPROCKI, Assistant Prosecuting Attorney, for Appellant.

ANDREW ORTNER, Attorney at Law, for Appellee.